**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **TIMEX GROUP USA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MARGARET A. FOCARINO,** | ) | **Case No. 1:12-cv-1080** |
| **Commissioner of Patents,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

DEC 17 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

At issue on cross-motions for summary judgment in this 15 U.S.C. § 1071(b)(1) action seeking review of a decision from the Patent and Trademark Office ("PTO")'s Trademark Trial and Appeal Board ("TTAB") is whether the TTAB erred in denying registration for the term "INTELLIGENT QUARTZ" in connection with Timex watches on the ground that the term is descriptive. More specifically, the two questions presented here are:

i. Whether the TTAB's determination that INTELLIGENT QUARTZ is descriptive is supported by substantial evidence in the administrative record; and

ii. Whether, on the basis of the record as a whole, including the administrative record and the new evidence submitted to the district court, plaintiff has met its burden of showing that INTELLIGENT QUARTZ is suggestive and thus deserving of trademark protection.

For the reasons that follow, the TTAB erred in denying registration; INTELLIGENT QUARTZ is suggestive rather than descriptive and thus merits trademark protection. Accordingly, plaintiff's motion for summary judgment must be granted, and defendant's motion for summary judgment must be denied.

- 1 -

**I.**

Plaintiff Timex Group USA, Inc. ("Timex"), a Delaware corporation and well-known American watch manufacturer, filed an intent-to-use application on October 29, 2010 for the term INTELLIGENT QUARTZ in connection with watches.[1]  In an Office Action issued on December 15, 2010, the PTO Trademark Examining Attorney refused to register INTELLIGENT QUARTZ on the ground that it was merely descriptive of a characteristic or feature of the identified goods.  Plaintiff filed a response on January 10, 2011, arguing that the words INTELLIGENT and QUARTZ, when used together, are suggestive rather than descriptive because they do not immediately convey to the consumer any characteristics or features of the relevant Timex watches.  The PTO Examining Attorney disagreed, and on February 5, 2011, issued a Final Office Action denying registration.  A subsequent Office Action, on August 16, 2011, denied plaintiff's request for reconsideration.  Plaintiff then appealed this ruling to the TTAB, arguing that the PTO erred in finding the term descriptive.  Thereafter, on July 26, 2012, the TTAB affirmed the Examining Attorney's refusal to register the term INTELLIGENT QUARTZ as a trademark.  *In re Timex Group USA, Inc.*, No. 85164601 (T.T.A.B., July 26, 2012) [hereinafter *Timex*].

In affirming the Examining Attorney's ruling, the TTAB concluded that the term is merely descriptive, stating that "consumers and prospective consumers viewing the mark INTELLIGENT QUARTZ as applied to watches will understand the mark to mean that the watch contains a quartz component controlled by a computer chip." *Id.* at 10.  In support of this finding, the TTAB rejected Timex's argument that consumers would need to "stop and consider" what INTELLIGENT and QUARTZ mean when combined, and concluded instead that "[t]he

---

[1] In its application, plaintiff disclaimed the word QUARTZ in the mark as descriptive pursuant to Lanham Act § 6, 15 U.S.C. § 1056.

mark does not convey any multiple meanings, double entendre or incongruity." *Id.* at 11. As such, the TTAB held that "the individual components of the mark, the words 'Intelligent' and 'Quartz' retain their descriptive meaning when used in connection with watches with a quartz component controlled by a computer chip." *Id.* at 11-12.

Thereafter, on September 25, 2012, plaintiff filed this action seeking review of the TTAB's decision pursuant to 15 U.S.C. § 1071(b)(1), arguing that the TTAB erred in finding that the term INTELLIGENT QUARTZ is merely descriptive. Plaintiff seeks (i) reversal of the TTAB's decision, (ii) a declaration that the term INTELLIGENT QUARTZ is suggestive, (iii) an Order requiring the PTO to approve the application for registration, and (iv) any other relief deemed proper. The parties have filed cross-motions for summary judgment that have been fully briefed and argued. The motions present the question whether the TTAB erred in finding that the term INTELLIGENT QUARTZ is descriptive rather than suggestive.

## II.

The summary judgment standard is too well-settled to merit extended discussion, and the parties do not dispute the standard. Summary judgment should not be granted when the non-moving party has "set forth specific facts showing that there is a genuine issue for trial" through "affidavits or as otherwise provided." Rule 56, Fed. R. Civ. P. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Plaintiff has filed this action under 15 U.S.C. § 1071(b)(1), which allows trademark applicants dissatisfied with the TTAB's decision either to appeal to the Court of Appeals for the

Federal Circuit or to file an action in district court.[2]  Where, as here, the plaintiff files an action

in the district court, the district court "'sits in a dual capacity,' serving on one hand as the finder

of fact with respect to new evidence presented by the parties, and on the other as an appellate

reviewer of facts found by the TTAB." *Glendale Intern. Corp. v. U.S. Patent & Trademark

Office*, 374 F. Supp. 2d 479, 485 (E.D. Va. 2005).  On review, federal district courts have the

power to modify the TTAB decision and declare that the plaintiff's mark is entitled to

registration.[3]

When acting as an appellate reviewer in an action under § 1071(b)(1), a district court

reviews the TTAB's findings of fact deferentially and must uphold those findings of fact if they

are supported by "substantial evidence" under the Administrative Procedure Act ("APA").[4]  The

TTAB's finding that a term is descriptive is a finding of fact subject to review under the

substantial evidence standard.  *See* 2 *McCarthy on Trademarks and Unfair Competition* § 11.3

(4th ed. 2013) [hereinafter *McCarthy*].  And substantial evidence, the Supreme Court teaches, is

---

[2] Appeal from a district court decision under 15 U.S.C. § 1071(b)(1) properly goes to the relevant circuit court rather than to the Court of Appeals for the Federal Circuit. *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001) (explaining that "the courts of appeal, other than the Federal Circuit, have appellate jurisdiction to review the district court's decision" in a § 1071(b) action). Accordingly, this case is governed by Fourth Circuit law. But given that the Fourth and Federal Circuits do not differ on issues of descriptiveness vs. suggestiveness, decisions from both circuits are appropriately cited here.

[3] *See* 15 U.S.C. § 1071(b)(1) ("The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear. Such adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law.").

[4] 5 U.S.C. § 706(2); *see Dickinson v. Zurko*, 527 U.S. 150, 165 (1999) (holding that the proper standard of judicial review of findings of fact made by the PTO is the "substantial evidence" standard of the APA); *On-Line Careline v. America Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000) (applying *Zurko* to findings of fact made by the TTAB); *Skippy, Inc. v. Lipton Inv., Inc.*, 345 F. Supp. 2d 585, 587 (E.D. Va. 2002) (stating that "the district court must . . . afford deference to the fact-findings of the TTAB").

"more than a mere scintilla of evidence" and requires "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *In re Pacer Technology*, 338 F.3d 1348, 1349 (Fed. Cir. 2003) (quoting *Consol. Edison v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Further, as the Federal Circuit has noted, "a review for substantial evidence 'involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decisions.'" *On-Line Careline*, 229 F.3d at 1086 (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487-88 (1951)). Thus, a finding of fact by the TTAB will not be "upset unless it is not supported by substantial evidence." 3 *McCarthy* § 21:21 (citing *Dickinson v. Zurko*, 527 U.S. at 165). Moreover, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (quoting *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966)). In sum, as the Federal Circuit instructs, the TTAB's decision "may not be reversed . . . even if [the reviewing court] would have viewed the facts differently if sitting as the tribunal of original jurisdiction," provided that substantial evidence supports the TTAB's ruling. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012). If the evidence before the TTAB supports two conclusions, "the Board's decision to favor one over the other . . . must be sustained . . . as supported by substantial evidence." *Id.*

By contrast, where a district court in a § 1071(b)(1) action acts as a finder of fact with regard to new evidence submitted by the parties, the district court reviews this new evidence *de novo* and makes findings of fact on whether the putative mark warrants trademark protection.[5] Of course, in reviewing newly-submitted evidence, a district court must bear in mind that the

---

[5] *See Glendale*, 374 F. Supp. 2d at 485 (stating that "decisions of the TTAB are reviewed *de novo* with respect to conclusions of law"); *Skippy*, 345 F. Supp. 2d at 586 ("Review of new evidence is *de novo*.").

plaintiff has the "laboring oar to establish error by the [TTAB]" by a preponderance of the evidence, because plaintiff "does not start over to prosecute his application before the district court unfettered by what happened in the PTO." *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1036-38 (Fed. Cir. 1985). Thus, the plaintiff's evidence must be sufficient to establish by a preponderance of the evidence, based on the record as a whole, including the administrative record, that the proffered mark warrants trademark protection.

Accordingly, the analysis in this case proceeds as follows. First, the TTAB's finding of fact—*viz.*, the TTAB's conclusion that the term INTELLIGENT QUARTZ is merely descriptive—must be reviewed deferentially pursuant to the substantial evidence standard. Next, the new evidence submitted by the parties must be reviewed *de novo* to determine what findings of fact are warranted by this new evidence. Finally, in the event that the new evidence warrants findings that contradict, or are inconsistent with, the TTAB's factual findings, the district court must then consider whether the record as a whole establishes that plaintiff has borne its burden of proving by a preponderance of the evidence that the term INTELLIGENT QUARTZ is suggestive in connection with Timex watches and is therefore a protectable mark.

### IV.

The following well-settled principles provide the lens through which both the TTAB's descriptiveness determination and the parties' new evidence must be viewed and evaluated. Marks can be sorted into the following four categories along a spectrum of distrinctiveness—the more distinctive the mark, the more likely it is to warrant trademark protection: (i) generic, (ii) descriptive, (iii) suggestive, and (iv) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); 2 *McCarthy* § 11.2. Of course, generic terms do not deserve trademark protection whereas arbitrary or fanciful terms generally do. *Abercrombie*, 537

F.2d at 9. By contrast, marks determined to be suggestive are deemed protectable, while descriptive marks are protectable only if they have acquired secondary meaning.[6] *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1033 (9th Cir. 2010). The Seventh Circuit has explained that the rationale for prohibiting the use of descriptive terms as trademarks as follows:

> The rationale . . . rests upon the equal right of another individual producing and marketing a similar product to describe his or her product with similar accuracy. Were this right not protected by the law, elements of the language could be monopolized in such a way as to impoverish others' ability to communicate. *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 907 (7th Cir. 1983).

In order to be labeled "descriptive," a word or phrase must give some "reasonably accurate" or "tolerably distinct" "knowledge . . . as to what that product is made of." *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694, 699 (2d Cir. 1961). If, by contrast, a consumer is required to "use imagination or any type of multistage reasoning to understand the mark's significance," the mark is considered suggestive rather than descriptive. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010). For obvious reasons, this process of mental gymnastics is referred to as the "imagination test." The Federal Circuit has elucidated this distinction between descriptive and suggestive marks as follows:

> A mark is merely descriptive if it immediately conveys information concerning a quality or characteristic of the product or service. The perception of the relevant purchasing public sets the standard for determining descriptiveness. Thus, a mark is merely descriptive if the ultimate consumers immediately associate it with a quality or characteristic of the product or service. On the other hand, if a mark requires imagination, thought, and perception to arrive at the qualities or characteristics of the goods, then the mark is suggestive. *In re MBNA Am. Bank,*

---

[6] *McCarthy on Trademarks* defines secondary meaning as follows:

> The prime element of secondary meaning is a mental association in buyers' minds between the alleged mark and a single source of the product. It is the word "association" which appears most often in judicial definitions of secondary meaning by both federal and state courts. 2 *McCarthy* § 15:5.

*N.A.*, 340 F.3d 1328, 1332 (Fed. Cir. 2003) (internal citations and quotation marks omitted).

The essential factors to be considered in the imagination test are: (i) the length and breadth of the required mental leap, (ii) the directness of the association between the mark to some characteristic of the product, and (iii) whether or not the link between the mark and the nature of the product is immediate. 2 *McCarthy* § 11:67.

A second, less frequently-used test, known as the "competitors' need test," and referred to by the parties as the "commercial needs test" asks whether "the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would be likely to need to use the term in describing their goods in advertising and promotion." 2 *McCarthy* § 11:68. According to the leading commentator in the field, a court applying this test should ask: "Is descriptive information conveyed by the mark so remote and subtle that it is [un]likely to be needed by competitive sellers to describe their goods or services?" *Id.* If the answer is yes, then the mark is likely suggestive.[7]

As is the case with INTELLIGENT QUARTZ, two or more words may be combined to form what is referred to as a composite mark. It is well-settled that two or more words which are themselves descriptive may be combined to form a composite that is, as a whole, considered suggestive. *See* 2 *McCarthy* § 11.26. The classic example used to illustrate this point is the mark SUGAR & SPICE used on bakery products. Although each of the terms SUGAR and SPICE individually is descriptive, "when combined and used on bakery goods," the U.S. Court of Customs and Patent Appeals held that the words "may function as an indication of more than

---

[7] Interestingly, federal courts have recognized that the two tests are related. As the Ninth Circuit has said, "[t]he competitors' needs test is related to the imagination test, because the more imagination that is required to associate a mark with a product or service, the less likely the words used will be needed by competitors to describe their products or services." *Zobmondo*, 602 F.3d at 1117 (internal quotation marks omitted).

a mere description of the ingredients of the goods on which the mark is used and, . . . are not 'merely descriptive' of such goods within the meaning of section." *In re Colonial Stores, Inc.*, 394 F.2d 549, 552 (C.C.P.A. 1968). A composite mark must be evaluated as a whole and not divided into its component parts because "[t]he commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920). But, "[i]n considering a mark as a whole, the Board may weigh the individual components of the mark to determine the overall impression or the descriptiveness of the mark and its various components." *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1174 (Fed. Cir. 2004). It remains to apply these principles to the questions presented.

## V.

Analysis properly begins with a review of the TTAB's finding that the proffered mark is descriptive under the deferential substantial evidence standard. The TTAB relied on the following evidence entered into the administrative record in reaching this finding:

    i.    Dictionary definitions of the word INTELLIGENT;[8]

    ii.    Three advertisements for Timex INTELLIGENT QUARTZ watches;[9]

---

[8] These dictionary definitions make clear that INTELLIGENT has a specialized meaning in the field of computer science and technology. Various dictionary definitions in the administrative record contain computer-science/technology specific definitions such as: "designating or of a terminal capable of performing certain functions with the data, independently of the computer," "equipped with a microprocessor or computer," and "(of computerized functions) able to modify action in light of ongoing events." The proffered dictionary definitions also make clear that INTELLIGENT has other common meanings outside of the field of computer science, including: "having good understanding or a high mental capacity; quick to comprehend, as persons or animals," "displaying or characterized by quickness of understanding, sound thought, or good judgment," and "having the faculty of reasoning and understanding; possessing intelligence." *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1).

[9] The three watch advertisements entered into the administrative record are for the following specific products: (i) "Men's Timex T2N500 Intelligent Quartz Chronograph Watch," (ii)

    iii.    Articles on industry websites that discuss INTELLGENT QUARTZ as a watch technology;[10] and

    iv.    Information referring to Seiko INTELLIGENT QUARTZ watches produced during the time period that Seiko held trademark registration for the mark INTELLIGENT QUARTZ.[11]

Relying on this evidence, the TTAB used the following line of reasoning to reach its descriptiveness finding pursuant to the imagination test:

    i.    INTELLIGENT, in the computer science context, is defined as capable of data processing, and

---

"Timex Intelligent Quartz SL Series Multi-functional Watches," and (iii) "Intelligent Quartz Fly-Back Chronograph Compass." *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1).

[10] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1). The articles in the administrative record are:

- A *Moodie Report* article titled: "Timex Introduces Intelligent Quartz Innovation at Basel Fair."

- A *watchmarketreview.com* article titled: "Just Launched / Timex / Intelligent Quartz Technology."

- A *Daily Watch News* article titled: "New Timex watches to feature Intelligent Quartz technology."

[11] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1). The information on Seiko INTELLIGENT QUARTZ products in the administrative record consists of:

- An *ebay* listing for "Vintage Seiko Intelligent Quartz Chrono / Alarm in Box."

- A posting on the Seiko website that asserts that in 1988, Seiko produced the "world's first intelligent analog quartz watch controlled by CPU-IC."

- An article on *www.classicwatch.com* that states that in 1988 Seiko produced "the first Intelligent Quartz watch – a chronograph with alarm, calendar, and 1/10th second timer functions, controlled by an IC 'computer on a chip.'"

- A website, apparently on grammar and language, that includes the sentence: "The new Perpetual Calendar watch from Seiko is Future Proof. Its intelligent-quartz technology will self-adjust the date accurately for the next hundred years, including all leap years."

    ii.   INTELLIGENT, in this mark, modifies QUARTZ; therefore

    iii.   the mark describes "a quality or characteristic of the product";[12] specifically that "the watch contains a quartz component controlled by a computer chip."[13]

In other words, the TTAB concluded that because INTELLIGENT has a particular meaning in the field of electronics—"equipped with a microprocessor or computer"[14]—consumers would understand INTELLIGENT QUARTZ to describe a quality or characteristic of the watch; namely that "the watch contains a quartz component controlled by a computer chip." *Timex* at 10.

    In reaching the conclusion that the mark is descriptive, the TTAB rejected Timex's argument that the alternative definitions of INTELLIGENT require consumers to use imagination to discern the meaning of INTELLIGENT QUARTZ, finding instead that the words INTELLIGENT and QUARTZ retain their individual descriptive meanings even in the context of a composite mark. *Id.* at 11-12.[15] Therefore, the TTAB determined under the imagination test that INTELLIGENT QUARTZ in connection with Timex watches is descriptive.

---

[12] *In re MBNA Am. Bank*, 340 F.3d at 1332.

[13] *Timex* at 10.

[14] *www.yourdictionary.com* entry for "intelligent." *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1).

[15] The TTAB also drew the following conclusions:

    I.  Third-party registrations for INTELLIGENT QUARTZ, INTELLIGENT CALENDAR, and INTELLI-TIME do not rebut the finding of descriptiveness because each application must be decided on its own merits. *Timex* at 12-13. In its discussion, the TTAB relied on evidence of three third-party registrations: (i) Seiko's cancelled INTELLIGENT QUARTZ mark, which was registered in 1991 and cancelled in 2002 (Registration No. 1648797), (ii) Seiko's cancelled INTELLIGENT CALENDAR mark, which was first registered in 1993 and ultimately cancelled in 2007 (Registration Nos. 2397072; 1803715), and (iii) a currently-held mark for INTELLI-TIME registered in 2007 (Registration No. 3525382).

The TTAB's determination that the composite mark INTELLIGENT QUARTZ is descriptive is contrary to substantial evidence in the administrative record. This is so because the lynchpin of the TTAB's descriptiveness finding is the erroneous factual finding that "the watch contains a quartz component controlled by a computer chip." *Id.* at 10. To the contrary, there is no support in the administrative record for the proposition that the quartz component in a Timex INTELLIGENT QUARTZ watch is controlled by a computer chip. Indeed, the quartz component is not so controlled. Rather, the administrative record demonstrates that, as with any quartz timepiece, the quartz crystal in a Timex INTELLIGENT QUARTZ watch oscillates at a precise frequency, creating a time base for the watch. Microprocessors do not control the quartz, but instead work off of the time base set by the quartz to control the watch's advanced features, such as the perpetual calendar or chronograph. Accordingly, INTELLIGENT is not descriptive of the QUARTZ component in a Timex INTELLIGENT QUARTZ watch.

A review of the evidence relied on by the TTAB confirms the absence of substantial evidence to support the TTAB's finding that the quartz component is controlled by a computer chip. Thus, to begin with, the TTAB took judicial notice of the Encyclopedia Britannica entry for "clock" in its decision, which accurately states that:

> The timekeeping element of a quartz clock consists of a ring of quartz about 2.5 inches (63.5 mm) in diameter, suspended by threads and enclosed in a heat-

---

II. Plaintiffs did not submit sufficient evidence of competitors' use of the term INTELLIGENT QUARTZ to warrant a finding under the competitors' need doctrine. *Id.* at 13-14.

The TTAB's determination under the imagination test that the composite mark INTELLIGENT QUARTZ is descriptive is based on an erroneous factual finding and thus not supported by substantial evidence. Accordingly, the TTAB's additional determination that plaintiff's proffered evidence on (i) third-part registrations and (ii) the competitors' need test was insufficient to rebut the TTAB's descriptiveness finding need not be reached here. The merits of those arguments will be discussed to extent appropriate in the *de novo* review of the new record before the district court.

> insulated chamber. Electrodes are attached to the surfaces of the ring and connected to an electrical circuit in such a manner as to sustain oscillations. . . . The vibrations are so regular that the maximum error of an observatory quartz-crystal clock is only a few ten-thousandths of a second per day, equivalent to an error of one second every 10 years. *Timex* at 5 (quoting "Clock," *Encyclopedia Britannica Online Academic Edition* (2012)).

After taking judicial notice of the encyclopedia entry that describes how quartz time-keeping devices function, the TTAB cited the three Timex advertisements in the administrative record,[16] arguing that they "corroborate [the] finding of fact" that INTELLIGENT QUARTZ watches "contain[] a quartz component controlled by a computer chip." *Timex* at 10. Yet, the three referenced advertisements contain no such representation. Nor is this surprising, given that it is not the case that a computer chip controls the quartz crystal.

The TTAB provided no additional evidentiary support from the administrative record for the finding of fact upon which its descriptiveness determination was premised. And indeed, there is no evidence in the administrative record that the quartz component in a Timex INTELLIGENT QUARTZ watch functions any differently from the quartz component in any other timekeeping device; *viz.*, that the quartz crystal oscillates to provide a time base for the device. Specifically, there is *no* evidence, much less substantial evidence, in the administrative record to support the proposition that the quartz components in Timex INTELLIGENT QUARTZ watches are controlled by computer chips, as the TTAB asserted. *See id.* at 10. Thus, INTELLIGENT is not descriptive of QUARTZ in connection with Timex INTELLIGENT QUARTZ watches. It follows that there is not substantial evidence to support the TTAB's finding of descriptiveness.

---

[16] *See supra* note 9.

## VI.

The conclusion that the TTAB's decision is not supported by substantial evidence does not end the analysis. Because Timex has chosen to sue in district court, rather than appeal to the Court of Appeals for the Federal Circuit, the parties had the opportunity to introduce new evidence here not considered by the TTAB.[17]  Both parties did so, and it is now necessary to ascertain this new evidence *de novo* and to determine whether the record as a whole reflects that plaintiff has established, by a preponderance of the evidence, that the term INTELLIGENT QUARTZ is suggestive and thus entitled to trademark protection.

The new evidence submitted by the parties covers a wide variety of sources.  This is appropriate because it is well-settled that evidence as to descriptiveness vs. suggestiveness "may be obtained from any competent source, such as dictionaries, newspapers, or surveys." *Dalton v. Honda Motor Co., Ltd.*, 425 Fed.Appx. 886, 892 (Fed. Cir. 2011).  In addition, courts may consider third-party registrations[18] among these competent sources, as "probative evidence of the meaning of a word, in the same way that a dictionary can be used." 2 *McCarthy* § 11:69.  Yet, it must be remembered that third-party registrations "are not conclusive on the question of descriptiveness." *Dalton*, 425 Fed.Appx. at 894.  Consistent with the broad range of materials relevant to the descriptiveness vs. suggestiveness issue, both parties have submitted towering binders brimming with dictionary definitions, encyclopedia entries, watch advertisements, trade

---

[17] *See* 35 U.S.C. § 145; *Dickinson v. Zurko*, 527 U.S. at 164 (stating that review by a district court "permits the disappointed applicant to present to the court evidence that the applicant did not present to the PTO"); *Glendale*, 374 F. Supp. 2d at 484 n.7.

[18] The parties spilled much ink in their briefs on the appropriate weight to be accorded to third-party registrations using the same or similar terms as the mark seeking registration.

press, and third-party registrations[19] to support their arguments. Specifically, the parties have

submitted the following new evidence for this action before the district court.

<u>New Evidence Submitted by Plaintiff:</u>

1) Declaration of Louis Galie, Senior Vice President of Technology at Timex, asserting that "to the extent that the INTELLIGENT QUARTZ watches contain computer chips, those chips unequivocally exert no control whatsoever over the quartz in the watch." (Doc. 26)
2) Third-party registrations in which INTELLIGENT is part of a composite mark and describes another word within the mark. (Doc. 24, Ex. 1)
3) Timex ads showing how the mark is used. (Doc. 24, Ex. 2)
4) Registrations for the mark SMARTWATCH. (Doc. 24, Ex. 3)
5) Articles from technology publications, none of which use the term INTELLIGENT QUARTZ or the word INTELLIGENT. (Doc. 24, Ex. 4)
6) Registration for the mark INTELLI-TIME. (Doc. 24, Ex. 5)
7) Dictionary definitions of INTELLIGENT that do not mention a computer or microprocessor. (Doc. 24, Ex. 6)
8) Dictionary definitions of QUARTZ. (Doc. 24, Ex. 7)

<u>New Evidence Submitted by Defendant:</u>

1) Selected advertising and manuals for Timex INTELLIGENT QUARTZ watches. (Doc. 28, Ex. 1)
2) *Merriam-Webster Collegiate Dictionary* definition of INTELLIGENT. (Doc. 28, Ex. A)
3) *Good Word Guide* definition of "smart." (Doc. 28, Ex. B)
4) Twenty-one representative examples of websites showing use of the term INTELLIGENT in connection with watches. (Doc. 28, Ex. C)
5) One-hundred representative examples of third-party registrations for marks containing the term INTELLIGENT. (Doc. 28, Ex. D)
6) *Oxford English Dictionary* definition of INTELLIGENT. (Doc. 28, Ex. E)
7) Sixteen representative examples of articles referencing "intelligent watches" and "intelligent watch" products. (Doc. 28, Ex. F)
8) *Collins English Dictionary* definition of "quartz watch." (Doc. 28, Ex. G)
9) Entries for "quartz watch" from online reference websites www.brittanica.com, www.smithsonian.gov, and www.howstuffworks.com. (Doc. 28, Ex. H)
10) Twenty representative examples of articles regarding "quartz watches" and "quartz watch" products. (Doc. 28, Ex. I)
11) *Encyclopedia Britannica* entry for "computer chip." (Doc. 28, Ex. J)
12) *Encyclopedia Britannica* entry for "microprocessor." (Doc. 28, Ex. K)
13) Page from Timex website discussing INTELLIGENT QUARTZ technology. (Doc. 28, Ex. L)

---

[19] The certified administrative record is 219 pages long. Plaintiff submitted 646 pages of exhibits to the district court. Defendant submitted 760 pages of exhibits to the district court.

14) U.S. Patent Application No. 2010/0220559, which lists Louis M. Galie as an inventor. (Doc. 28, Ex. M)

A *de novo* review of this new evidence, and of the record as a whole, points persuasively to the conclusion that the mark INTELLIGENT QUARTZ is suggestive and therefore protectable. To begin with, the new record before the district court establishes, through a declaration from Timex Senior Vice President of Technology, that "[i]t is blatantly inaccurate that any watch sold by Timex under the INTELLIGENT QUARTZ mark contains a quartz component controlled by a computer chip."[20] Defendant properly does not contest this statement. It follows that the evidence warrants a finding that the quartz components in Timex INTELLIGENT QUARTZ watches are not controlled by computer chips. Given this important finding of fact, the mark INTELLIGENT QUARTZ must now be examined under the two tests for descriptiveness vs. suggestiveness: the imagination test and the competitors' need test.

## A. The Imagination Test

The mark must first be analyzed pursuant to the imagination test, under which a mark is deemed suggestive if "it stands for an idea which requires some operation of the imagination to connect it with the goods." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984). Consumers must employ a degree of imagination and mental reasoning to deduce that INTELLIGENT QUARTZ, "considered in relation to the particular goods for which registration is sought,"[21] pertains to analog watches with quartz timepieces that also include a feature such as an altimeter, a compass, a depth gauge, a chronograph, or a calendar. As is demonstrated below, in the context of the watch industry, INTELLIGENT QUARTZ does not, as would be required for a finding of descriptiveness, "convey[] an immediate idea of the ingredients, qualities or

---

[20] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Decl. of Louis Galie; Doc. 26).

[21] *Dalton*, 425 Fed.Appx. at 891.

characteristics of the goods." *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F. Supp. 479, 488 (S.D. N.Y. 1968).

This conclusion finds firm support in the new evidence submitted to the district court. The array of dictionary definitions submitted by the parties will be considered first. Plaintiff has disclaimed QUARTZ as descriptive, and the record establishes that QUARTZ is "a hard glossy mineral consisting of silicon dioxide in crystal form,"[22] but that in the context of watches, consumers understand a QUARTZ watch to be "a watch that is operated by the vibrations of a quartz crystal controlled by a microcircuit."[23] The analysis therefore turns on the meaning of INTELLIGENT within the composite mark INTELLIGENT QUARTZ. The various dictionary definitions of INTELLIGENT proffered by the parties can be categorized into two broad groups.[24] The primary definition of INTELLIGENT relates to persons or animals who "hav[e] a high degree or good measure of understanding,"[25] or "[s]how[] sound judgment and rationality."[26] A secondary definition relates to the field of computers and technology and

---

[22] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (*www.vocabulary.com* definition of QUARTZ; Doc. 24, Ex. 7).

[23] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (*Collins English Dictionary* definition of "quartz watch"; Doc. 28, Ex. G).

[24] Plaintiff submitted dictionary definitions of INTELLIGENT from: (1) *American Heritage Dictionary*, (2) *www.vocabulary.com*, (3) *Collins English Dictionary*, (4) *www.yourdictionary.com*, (5) *www.freedictionary.com*, and (6) *Cambridge Dictionary*. *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Doc. 24, Ex. 7). Defendant submitted dictionary definitions from: (1) *Merriam-Webster Dictionary*, and (2) *Oxford English Dictionary*. *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (Doc. 28, Ex. A, E).

[25] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (*Oxford English Dictionary* definition of INTELLIGENT; Doc. 28, Ex. E).

[26] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (*American Heritage Dictionary* definition of INTELLIGENT; Doc. 24, Ex. 7).

describes an electronic device that is "guided or controlled by a computer,"[27] "able to process data independently,"[28] or "able to modify action in the light of ongoing events."[29] Because INTELLIGENT has two possible definitions, it must be determined (i) whether consumers of watches will immediately understand INTELLIGENT, in the context of the mark, to convey that the product contains a feature such as a chronograph, altimeter, or compass, or (ii) whether such consumers will need to engage their imagination to deduce those particular attributes of the Timex INTELLIGENT QUARTZ products. This determination is made by examining how INTELLIGENT is used in the relevant context, through sources such as advertisements and publications.

Analysis next proceeds to the advertisements and publications entered into the record, which demonstrate how INTELLIGENT and INTELLIGENT QUARTZ are used in the context of watches and electronic devices. Plaintiff submitted advertisements and articles from technology publications that discuss internet-capable watches, which to the devices as "smart watches,"[30] "e-watches,"[31] and "high-tech watches,"[32] but *not* as "intelligent watches."

---

[27] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (*Merriam-Webster Dictionary* definition of INTELLIGENT; Doc. 28, Ex. A).

[28] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (*Oxford English Dictionary* definition of INTELLIGENT; Doc. 28, Ex. E).

[29] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (*Collins English Dictionary* definition of INTELLIGENT; Doc. 24, Ex. 7).

[30] Sony website; *Techcrunch.com* article on Casio G-Shock watch; *Techcrunch.com* article on Apple smart watch; *allthingsd.com* article on Casio G-Shock watch; *allthingsd.com* articles on Pebble E-Ink watch; *cnet.com* article on smart watches available in 2013; *cnet.com* article on rumored Apple smart watch. *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Doc. 24, Ex. 5).

[31] *Techcrunch.com* article on Cookoo e-watch. *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Doc. 24, Ex. 5).

- 18 -

Defendant, in turn, has submitted 21 examples of websites that use the word INTELLIGENT to refer to watches and other electronic devices with advanced technological capabilities,[33] and 16 articles from technology publications that refer to "intelligent watches."[34] These advertisements and publications demonstrate that watches with technological capabilities are sometimes referred to as "smart watches" and sometimes referred to as "intelligent watches." Yet, defendant has failed to provide a single instance in which a watch with such features is referred to descriptively as an INTELLIGENT QUARTZ watch. Indeed, the only evidence of use of INTELLIGENT

---

[32] *Techcrunch.com* article on Division Furtive electro-mechanical watches. *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Doc. 24, Ex. 5).

[33] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (Doc. 28, Ex. C).   Examples include:

- "Could this be the most intelligent watch ever built?" (Seiko website; Ex. C.3).

- "The Cookoo Intelligent Analog Watch is a Perfect Gift Late." (*itechminder.com*; Ex. C.5).

- "Kriĕger pioneered the very first watch intelligent enough to accurately predict high and low tides." (Kriĕger advertisement; Ex. C.6).

- "The sports watch that thinks it's a PDA! From Timex, this intelligent watch combines the convenience of a personal organizer with the performance of a full-function time-keeping device." (QVC listing for Timex product; Ex. C.8).

- "It was one of the first manufacturers to incorporate intelligent technologies in wristwatches and introduced collections with time zone, temperature, altitude, and GPS positioning displays." (*top10watches.net* profile of Casio; Ex. C.9).

- "It's all about intelligent watches at CES this year." (*pocket-lint.com* article; Ex. C.14).

[34] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (Doc. 28, Ex. F).   Examples include:

- "Those who want to wear their technology just under their sleeves while maintaining a bit of classic style have a number of new fashionable, intelligent watches to try." (*New York Times* article).

- "In smartphone's wake comes the intelligent watch." (*globalpost.com* article).

QUARTZ to refer to anything other than Timex's product line is in reference Seiko's prior INTELLIGENT QUARTZ products, for which Seiko previously held trademark registration.[35] Therefore, "intelligent watch" may be considered descriptive, but that mark is not at issue in this case. Rather, the mark INTELLIGENT QUARTZ is at issue here, in which INTELLIGENT modifies a type of mineral commonly used in timekeeping devices. In this context, INTELLIGENT QUARTZ does not convey an *immediate* idea of the characteristics of the relevant product, as the imagination test requires for a descriptiveness finding. *See Stix Products*, 295 F. Supp. At 488. This is so because INTELLIGENT does not describe QUARTZ; even in the context of a timekeeping device, QUARTZ is not independently capable of data storage or processing. Rather, consumers must exercise imagination or mature reasoning[36] to ascertain that INTELLIGENT QUARTZ relates to a watch in which a quartz crystal provides the time-base for the watch, and an embedded microprocessor operates an additional feature such as a chronograph or compass. Indeed, Timex INTELLIGENT QUARTZ watches would arguably not even fall under the secondary definition of INTELLIGENT because they are not internet-capable and contain only limited features such as calendars and altimeters.

The numerous third-party registrations that the parties submitted do not alter this conclusion. Plaintiff submitted 533 pages of third-party registrations in which INTELLIGENT is part of a composite mark and modifies another word within the mark.[37] Among this exceedingly large number of third-party registrations that plaintiff submits are the marks: INTELLIGENT BIOCIDES, INTELLIGENT SPORT, INTELLIGENT RENTING,

---

[35] *See supra* note 11.

[36] *Pizzeria Uno*, 747 F.2d at 1528.

[37] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Doc. 24, Ex. 1).

INTELLIGENT DATING, and THE INTELLIGENT KITCHEN.  Plaintiff also submitted a third-party registration for the mark INTELLI-TIME, which is held by a manufacturer of a self-setting alarm clock.[38]  These third-party registrations are supportive of the notion that the term INTELLIGENT is not considered descriptive in a variety of instances in which it modifies a noun in a composite mark.

Not to be outdone, defendant submitted 406 pages detailing 100 active third-party INTELLIGENT formative registrations in which the mark is on the Supplemental Register because it has been deemed nondistinctive absent proof of secondary meaning, registered on the Principal Register under § 2(f) with proof of secondary meaning, or the INTELLIGENT formative portion of the mark is disclaimed as descriptive.[39]  Because the "real evidentiary value of third party registrations per se is to show the sense in which a term [or] word . . . of a mark is used in ordinary parlance," the third-party registrations submitted by defendant show, like the dictionary definitions and publications in the record, that INTELLIGENT can, in some contexts, be used descriptively to refer to electronic devices with certain technological capabilities.[40]  Yet, in the end, the numerous third-party registrations submitted by the parties are not dispositive of

---

[38] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., March 15, 2013) (Doc. 24, Ex. 5).

[39] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., April 12, 2013) (Doc. 28, Ex. D).  For example:

- INTELLIGENT POWER, which is registered on the Secondary Register and thus determined to be nondistinctive absent proof of secondary meaning.

- INTELLIGENT FIRST AID, which is registered on the Principle register under § 2(f) with proof of secondary meaning.

- INTELLIGENT POTTY, in which the words are disclaimed except as portrayed in the specific design of the mark.

[40] 2 *McCarthy* § 11.90.

anything beyond the fact that INTELLIGENT formative marks *may* be descriptive or *may* be suggestive, depending on context and use. In this case, context renders the mark suggestive.

Finally, even if the mark immediately conveyed to consumers the secondary, computer science and technology definition of INTELLIGENT, the composite mark in its entirety would be considered suggestive because it is incongruous. When two or more words in a composite mark are incongruous in combination with each other, that incongruity is "a strong indicator of suggestiveness." 2 *McCarthy* § 11.67. For example, the mark ROACH MOTEL was held to be suggestive because motels are not designed as housing for roaches and thus the "very incongruity is what catches one's attention." *American Home Products Corp. v. Johnson Chemical Co., Inc.*, 589 F.2d 103, 106 (2d Cir. 1978). The same holds true here. The word INTELLIGENT typically conveys either that a living being possesses reason and understanding, or that an electronic device has the ability to process and store data. Either of those definitions, applied to a piece of QUARTZ crystal—even one that oscillates inside of a watch—is incongruous. Accordingly, because INTELLIGENT QUARTZ requires consumers to exercise imagination or multistep reasoning to decipher the relevant characteristics of the product, the mark is suggestive.

**B. Competitors' Need Test**

The same result obtains under the secondary "competitors' need test," which asks whether "the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would be likely to need to use the term in describing their goods in advertising and promotion." 2 *McCarthy* § 11:68. Here, the record points persuasively to the conclusion that because INTELLIGENT does not describe QUARTZ, the "descriptive information conveyed by the mark [is] so remote and subtle that it is [un]likely to be needed by

competitive sellers to describe their goods or services[.]" *Id.*   As evidenced by the advertisements and technology publications submitted by the parties, the phrases "intelligent watch" or "smart watch" do convey descriptive information that competitors need to describe their products; namely that the product has data processing and storage capacity.   Yet, INTELLIGENT does not actually describe how the QUARTZ movement of a watch functions, and competitors therefore do not need this specific phrasing to describe watches with advanced technological capabilities and quartz timepieces.   Thus, the competitors' need test, when applied to the mark INTELLIGENT QUARTZ, yields the same result as the imagination test: INTELLIGENT QUARTZ is suggestive rather than descriptive.

## VII.

In sum, the TTAB's finding of descriptiveness is not supported by substantial evidence. Moreover, both the administrative record that was before the TTAB and the new evidence submitted here on appeal compel the conclusion that that plaintiff is entitled to summary judgment on the ground that the term INTELLIGENT QUARTZ is suggestive and thus a protectable mark.   Accordingly, plaintiff's motion for summary judgment is granted, defendant's motion for summary judgment is denied, and plaintiff is entitled to register the mark INTELLIGENT QUARTZ.

An appropriate Order will issue.


Alexandria, Virginia
December 17, 2013

T. S. Ellis, III
United States District Judge