IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TIMEX GROUP USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARGARET A. FOCARINO, | ) | Case No. 1:12-cv-1080 |
| Commissioner of Patents, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

F I L E D
JAN 13 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## ADDENDUM TO DECEMBER 17, 2013 MEMORANDUM OPINION

On December 17, 2013, an Order and Memorandum issued granting summary judgment for plaintiff Timex Group USA, Inc. ("Timex") and denying defendant Margaret A. Focarino's motion for summary judgment. *Timex v. Focarino*, 1:13-cv-1080 (E.D. Va., Dec. 17, 2013) (Order); *Timex v. Focarino*, 1:13-cv-1080 (E.D. Va., Dec. 17, 2013) (Mem. Op.). On December 18, 2013, judgment for plaintiff was entered accordingly. *Timex v. Focarino*, 1:13-cv-1080 (E.D. Va., Dec. 18, 2013) (Order).

On January 7, 2014, the Fourth Circuit clarified the standard of review that district courts must apply to decisions by the Trademark Trial and Appeal Board ("TTAB") in actions brought under 15 U.S.C. § 1071(b) in *Swatch AG v. Beehive Wholesale, LLC*, 12-2126, 2014 WL 46454 (4th Cir. Jan. 7, 2014). *Swatch* held that "where new evidence is submitted, de novo review of the entire record is required because the district court 'cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts.'" 12-2126, 2014 WL 46454 at *3 (quoting *Kappos v. Hyatt*, 132 S. Ct. 1690, 1700 (2012)). In so holding, the Fourth Circuit

1

implicitly overruled its *per curiam* affirmance of the district court's decision in *Skippy Inc. v. Lipton Investments*, in which the district court held that:

> In reviewing a case under 15 U.S.C. § 1071(b), the court sits in a dual capacity. On the one hand, the court is an appellate reviewer of facts found by the TTAB. On the other hand, the court is a fact-finder based on new evidence introduced to the court. Review of new evidence is de novo.

*Skippy, Inc. v. Lipton Inv., Inc.*, 345 F. Supp. 2d 585, 586 (E.D. Va. 2002), *aff'd sub nom. Skippy Inc. v. Lipton Investments, Inc.*, 74 F. App'x 291 (4th Cir. 2003).[1]

Because summary judgment in this case issued three weeks prior to the Fourth Circuit's *Swatch* opinion, it is understandable that the summary judgment opinion relied on the Fourth Circuit's unpublished opinion approving of the *Skippy* standard. Accordingly, while the new evidence in this case submitted to the district court was reviewed *de novo*, the TTAB's findings of fact based on the administrative record were reviewed under the more deferential substantial evidence standard. Under the former *Skippy* standard, the December 17, 2013 Memorandum Opinion concluded that (i) the TTAB erred in denying registration to plaintiff because its findings were not supported by substantial evidence, (ii) a *de novo* review of the new evidence submitted to the district court compelled the conclusion that the mark INTELLIGENT QUARTZ is suggestive rather than descriptive, and (iii) "plaintiff's evidence [was] sufficient to establish by a preponderance of the evidence, based on the record as a whole, including the administrative

---

[1] The Seventh Circuit had also affirmed that a district court reviewing a decision of the TTAB under § 1071(b) sits in a dual capacity. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001) ("[In a review under § 1071(b)] the district court sits in a dual capacity. It is an appellate reviewer of facts found by the TTAB and is also a fact-finder based on new evidence introduced to the court. Although the district court's review of the TTAB's decision is considered de novo when the parties present new evidence and assert additional claims, the district court also must afford deference to the fact findings of the TTAB.") (Internal citations omitted).

2

record, that the proffered mark warrant[ed] trademark protection." *Timex v. Focarino*, 1:13-cv-1080 (E.D. Va., Dec. 17, 2013) (Mem. Op.) at 6.

Given that there was not substantial evidence in the administrative record to support the TTAB's denial of trademark registration, it should come as no surprise that the same result obtains if the *Swatch* standard is applied and the administrative record is reviewed *de novo*. A brief review of the administrative record confirms this conclusion. The administrative record consists of the following:

i. Dictionary definitions of the word INTELLIGENT;[2]

ii. Three advertisements for Timex INTELLIGENT QUARTZ watches;[3]

iii. Articles on industry websites that discuss INTELLGENT QUARTZ as a watch technology;[4] and

---

[2] These dictionary definitions make clear that INTELLIGENT has a specialized meaning in the field of computer science and technology. Various dictionary definitions in the administrative record contain computer-science/technology specific definitions such as: "designating or of a terminal capable of performing certain functions with the data, independently of the computer," "equipped with a microprocessor or computer," and "(of computerized functions) able to modify action in light of ongoing events." The proffered dictionary definitions also make clear that INTELLIGENT has other common meanings outside of the field of computer science, including: "having good understanding or a high mental capacity; quick to comprehend, as persons or animals," "displaying or characterized by quickness of understanding, sound thought, or good judgment," and "having the faculty of reasoning and understanding; possessing intelligence." *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1).

[3] The three watch advertisements entered into the administrative record are for the following specific products: (i) "Men's Timex T2N500 Intelligent Quartz Chronograph Watch," (ii) "Timex Intelligent Quartz SL Series Multi-functional Watches," and (iii) "Intelligent Quartz Fly-Back Chronograph Compass." *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1).

[4] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1). The articles in the administrative record are:

- A *Moodie Report* article titled: "Timex Introduces Intelligent Quartz Innovation at Basel Fair."

3

    iv.    Information referring to Seiko INTELLIGENT QUARTZ watches produced during the time period that Seiko held trademark registration for the mark INTELLIGENT QUARTZ.[5]

A *de novo* review of this record demonstrates that, as stated in the December 17, 2013 Memorandum Opinion:

> [T]he administrative record demonstrates that, as with any quartz timepiece, the quartz crystal in a Timex INTELLIGENT QUARTZ watch oscillates at a precise frequency, creating a time base for the watch. Microprocessors do not control the quartz, but instead work off of the time base set by the quartz to control the watch's advanced features, such as the perpetual calendar or chronograph. Accordingly, INTELLIGENT is not descriptive of the QUARTZ component in a Timex INTELLIGENT QUARTZ watch.

*Timex v. Focarino*, 1:13-cv-1080 (E.D. Va., Dec. 17, 2013) (Mem. Op.) at 12.

Thus, the administrative record, like the new evidence submitted to the district court, makes clear that a quartz crystal is not capable of engaging in data storage or processing, and

---

- A *watchmarketreview.com* article titled: "Just Launched / Timex / Intelligent Quartz Technology."

- A *Daily Watch News* article titled: "New Timex watches to feature Intelligent Quartz technology."

[5] *Timex v. Focarino*, 1:12-cv-1080 (E.D. Va., Nov. 26, 2012) (Certified Admin. R.; Doc. 7-1). The information on Seiko INTELLIGENT QUARTZ products in the administrative record consists of:

- An *ebay* listing for "Vintage Seiko Intelligent Quartz Chrono / Alarm in Box."

- A posting on the Seiko website that asserts that in 1988, Seiko produced the "world's first intelligent analog quartz watch controlled by CPU-IC."

- An article on *www.classicwatch.com* that states that in 1988 Seiko produced "the first Intelligent Quartz watch – a chronograph with alarm, calendar, and 1/10th second timer functions, controlled by an IC 'computer on a chip.'"

- A website, apparently on grammar and language, that includes the sentence: "The new Perpetual Calendar watch from Seiko is Future Proof. Its intelligent-quartz technology will self-adjust the date accurately for the next hundred years, including all leap years."

4

hence INTELLIGENT does not describe QUARTZ. As a result, INTELLIGENT QUARTZ is nonsensical as a compound mark and thus cannot accurately describe how a timekeeping device works. Accordingly, in the context of the watch industry, INTELLIGENT QUARTZ does not, as would be required for a finding of descriptiveness, "convey[] an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F. Supp. 479, 488 (S.D. N.Y. 1968). Instead, the mark is suggestive.

Alexandria, VA
January 13, 2014

/s/
T. S. Ellis, III
United States District Judge